645 F.2d 858
 SAC AND FOX TRIBE OF INDIANS OF OKLAHOMA, Plaintiff-Appellant,
v.
Cecil D. ANDRUS, Secretary of the Interior of the United
States, Defendant-Appellee,
Angela Desiree Huffman, Alicia Carole Megehee, Sean Jerome
Thornton, William Francis Thornton, Jr., and Barry
Dan McAllister, Intervenors.
 No. 79-1866.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 26, 1981.
Decided April 1, 1981.
 
 Amos E. Black, III, Anadarko, Okl., for plaintiff-appellant.
 David C. Shilton, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., Larry D. Patton, U. S. Atty., John E. Green, First Asst. U. S. Atty., Oklahoma City, Okl., with him, on brief), for defendant-appellee.
 Delmer L. Stagner of Spradling, Stagner, Alpern & Friot, Oklahoma City, Okl., on brief, for intervenors.
 Before SETH, Chief Judge, and HOLLOWAY and LOGAN, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This is an action by the Sac and Fox Tribe seeking a review of a decision by the Secretary of Interior. This decision was that Susan Nawashe had been a member of the Sac and Fox Tribe and therefore certain of her descendants, who are the intervenors herein, were entitled to membership in the Tribe. The Tribe had opposed the position taken by the Secretary as its Business Committee had determined that Susan Nawashe had not been a member of the Tribe, but instead was a Shawnee married to a Sac and Fox tribal member. The trial court upheld the determination made by the Secretary, and the Tribe has appealed.
 
 
 2
 The "administrative record" submitted by the Bureau of Indian Affairs consists of letters from many sources, memorandums, and also unidentified material apparently from the Oklahoma Historical Society Archives. This correspondence was accumulated over the period from about 1968 until the decision of the Secretary in 1975.
 
 
 3
 The correspondence shows that the Bureau of Indian Affairs urged the Sac and Fox Tribe to prepare a roll of only Sac and Fox tribal members by a review and correction of the 1937 roll. This urging apparently began in 1966 or 1967 and was with a view to the distribution of funds from Indian claims settlement to the Sac and Fox.
 
 
 4
 The Tribe prepared the roll. Among the changes made was the removal of names of persons who did not have the required degree of Sac and Fox blood. This requirement was the one-quarter blood prescribed in the Constitution of the Tribe. The Business Committee of the Tribe, which was authorized by the Tribe to take such action, reduced the quantum of Sac and Fox blood of several persons whose names were on the roll. Among these persons were Rita Ann McAllister Megehee and Leroy McAllister who were grandchildren of Susan Nawashe. Their degree of blood was reduced to one-quarter. This reduction was made by the Committee because the members determined that Susan Nawashe was a Shawnee, her husband a Sac and Fox, and their children were thus one-half Sac and Fox, and the grandchildren (Rita Ann McAllister Megehee and Leroy McAllister), one-quarter. The Committee removed the names of the great-grandchildren of Susan Nawashe, Alicia Megehee and Barry McAllister, from the roll as they did not have one-quarter Sac and Fox blood. The names of other persons were also removed.
 
 
 5
 The Committee sent notices to those who were disenrolled or their status changed advising them of the action taken and that they could appeal within a designated time. Some did appeal but Rita Ann McAllister Megehee did not and instead apparently sought recognition as a Shawnee.
 
 
 6
 The Bureau approved the 1937 roll as prepared by the Business Committee of the Tribe in May of 1968 by a letter from the Acting Deputy Commissioner. This action was in accordance with 25 U.S.C. § 163 which in part provides:
 
 
 7
 "The Secretary of the Interior is authorized, wherever in his discretion such action would be for the best interest of the Indians, to cause a final roll to be made of the membership of any Indian tribe; such rolls shall contain the ages and quantum of Indian blood, and when approved by the said Secretary are declared to constitute the legal membership of the respective tribes for the purpose of segregating the tribal funds as provided in section 162 of this title, and shall be conclusive both as to ages and quantum of Indian blood ...."
 
 
 8
 Under this section the 1937 roll became final and the disenrollment was thereby complete.
 
 
 9
 It appears from the record that the same issue as to Susan Nawashe arose again in 1971. The Business Committee passed a resolution which affirmed the 1968 disenrollment. In September 1972 a letter was received by the Tribe from John Crow, Deputy Commissioner, which reaffirmed the prior approval of the roll, and approved the disenrollment. However, appeals by the heirs were permitted to be taken from this action which was some four years after the approval of the roll. On appeal Duard Barnes, an Associate Solicitor of Interior, took a different position and in June 1974 decided that Susan Nawashe had been adopted into the Sac and Fox Tribe, and in his view this was sufficient for his conclusion. The letter from Duard Barnes indicates that the issue was decided as a policy matter. It, in part, states:
 
 
 10
 "It has been a long-standing policy of this Department that persons of Indian blood who by marriage, adoption, or other tribal formality were recognized as members of the aboriginal tribe prior to the firm establishment of membership rights shall be considered as possessing the blood of the tribe with which they affiliated."
 
 
 11
 The Tribe asked for reconsideration which was given and the Acting Secretary decided that Susan Nawashe was a member of the Tribe apparently by reason of the adoption policy. The Secretary in his decision followed the reasoning of Mr. Barnes. However, the Secretary indicated that the roll would always be open.
 
 
 12
 The Tribe then sought this review in the United States District Court. It is clear that the Department's decision is limited to a holding that the heirs can participate in the distribution of federally-derived funds, and does not make them members of the Tribe for any other purpose. The authority as to funds is also derived from 25 U.S.C. § 163. We considered this aspect of the case in Martinez v. Southern Ute Tribe of Southern Ute Reservation, 249 F.2d 915 (10th Cir.).
 
 
 13
 Some comment is necessary as to what the Government describes as the "administrative record." This record consists of correspondence over a period of about eight or nine years with some additional unauthenticated photocopies of material from the Oklahoma Historical Society and from other sources. There is nothing to indicate that this material was the only data considered by the agency, or segregated as such. It does not show that the items included were submitted on any particular subject and does not show any date of receipt by the agency. At the most the material seems to have been assembled for the district court by making copies of material from the correspondence files. The files are not identified and the sheets are not identified as being part of any particular subject or hearing. An exception is a series of letters and material submitted by the heirs and upon which appear comments by the Tribe. These comments were solicited by the Bureau and constitute direct answers to certain contentions made by the heirs. This material is relatively clear and useful. The certificate which appears as the first sheet reads as follows:
 
 
 14
 "Pursuant to Title 28, Section 1733, United States Code, I hereby certify that each annexed paper is a true copy of a document comprising part of the official records of the Bureau of Indian Affairs, Department of the Interior: Relating to the appeals for enrollment of Alicia Carole Megehee, Angela Desiree Huffman, William Francis Thornton, Jr., and Sean Jerome Thornton, with the Sac and Fox Tribe of Oklahoma."
 
 
 15
 The certificate thus states that the papers included are part of the official records relating to the appeals for enrollment.
 
 
 16
 The sheets of the material which follow the certificate are not numbered and the whole is put together with removable fold-over metal fasteners. The certificate sheet is not attached except by the same metal fasteners. It bears a seal and ribbon which are attached only to the certificate sheet.
 
 
 17
 This is not a typical review of agency action because the agency is a trustee for the individuals and for the Tribe. The subject is very important, and the need for an orderly and organized resolution with an identification of the issues in the procedure is essential. The course of action here followed could not produce a record suitable for review by the officials or by the courts.
 
 
 18
 The most disturbing aspect of the "record" is the omission therefrom of the letter written by the Acting Deputy Commissioner, Charles B. Rovin, in May of 1968 which approved the roll which had been submitted by the Tribe. The trial court did not have the letter. It is difficult to see how this could have been left out without having omitted other significant material. It is obvious that we do not ordinarily consider matters outside the record, but in view of the nature of the record in this case and the reference to approval in the Secretary's decision, we have no hesitancy in considering this letter of Mr. Rovin now submitted by the Tribe.
 
 
 19
 The Government as one of its arguments on appeal states:
 
 
 20
 "As the district court pointed out, the Tribe offered no proof of its assertion that the Secretary had approved the roll in 1968 (R. 351). Nor does the Tribe offer any citation to the record in its brief to support the contention."
 
 
 21
 It appears to this court that this position by the Government in not denying the existence of its official letter but asserting it was not in the record it prepared is somewhat less than we are entitled to expect. This is especially so in view of the trust relationships, the importance of the letter to the proper resolution of the matter, and the duty owed to the trial court.
 
 
 22
 We must conclude on the law that the approval of the 1937 roll as a roll exclusively of Sac and Fox was final and conclusive. The persons whose status was changed were properly notified and took no appeal. The roll was final in 1968 as then approved under 25 U.S.C. § 163. As to the facts we must hold that the decision of the Secretary under review had no factual basis.
 
 
 23
 The application of 25 U.S.C. § 163 is a significant factor. It is important as to the finality of the roll on approval, and it contains the authority of the Bureau as to the disposition of funds. As mentioned, we considered the section as to the disposition of funds in Martinez v. Southern Ute Tribe of Southern Ute Reservation, 249 F.2d 915 (10th Cir.). See also Baciarelli v. Morton, 481 F.2d 610 (9th Cir.). Membership was referred to in Santa Clara Pueblo v. Martinez, 436 U.S. 49. We said in part in Martinez after references to 25 U.S.C. § 163:
 
 
 24
 "It appears that for purposes of which the tribe has complete control, the tribe conclusively determines membership; but where departmental action is authorized, the department may approve or disapprove the membership rolls of the tribe."
 
 
 25
 As to the finality of the roll we must refer to the statute itself. As mentioned above, 25 U.S.C. § 163 provides for the Secretary "to cause a final roll to be made of the membership of any Indian tribe," and the section states what the roll shall include "and when approved by the said Secretary are declared to constitute the legal membership ..., and shall be conclusive both as to ages and quantum of Indian blood." Pursuant to the statute and the Bureau's request, the entire roll was presented to show only Sac and Fox. This was approved in accordance with the statute.
 
 
 26
 The trial court did not consider the approval of the roll as a factor in the case because there was nothing by way of proof to demonstrate approval. The approval has been produced, it is not challenged by the Government, and we have already commented on the failure to include it in the record and will not do so again. We must hold that when the entire roll was prepared by the Tribe at the insistence of the Bureau, where the persons whose status was changed were notified and given a chance to appeal, and then when the roll was submitted for approval and was so approved (with additional research indicated), it became the final roll and was conclusive as to the quantum of Sac and Fox blood of the intervenors. It is apparent that this was concluded in 1968, and the 1971 and 1972 events were attempts to reopen the same issue concluded by approval. There is no authority for the Secretary to change the status of particular individuals upon an appeal four years after the roll became final. The roll had become conclusive under the statute.
 
 
 27
 It appears from section 163 that upon a suitable occasion, as one similar to the 1967-1968 needs, the Secretary or the Commissioner could request the Tribe to prepare a roll. The changes made in 1968 of the 1937 roll, and the submission of the new roll, were brought about by the need to determine Sac and Fox blood as a separate matter for the distribution of the Sac and Fox claims money. (See Pub.L. No. 94-189, 89 Stat. 1093, 1975.) The 1937 roll as originally prepared showed the total Indian blood. Thus a roll of the Sac and Fox only was required, and made. The 1937 roll thus was not a Sac and Fox only roll and did not purport to be. The 1884 roll apparently was, and was used as the basis for the changes. The original 1937 roll was probably final and conclusive as to Indian blood, assuming it was approved, but as a roll was not of Sac and Fox blood while the new 1937 roll was.
 
 
 28
 The decision of the Secretary is set aside and the corrected 1937 roll is the controlling Sac and Fox roll for the distribution of the claims money by reason of its approval in 1968 by Acting Deputy Commissioner Rovin. It is so ordered.