**Duane ALLERY, et al., Plaintiffs,**

v.

**Ross SWIMMER, et al., Defendants.**

**Civ. No. A2–88–98.**

United States District Court,
D. North Dakota,
Northeastern Division.

Nov. 5, 1991.

Duane E. Houdek, Legal Assistance of North Dakota, Bismarck, N.D., for plaintiffs.

Dennis D. Fisher, U.S. Attorney's Office, Fargo, N.D., and Cameron W. Hayden, U.S. Attorney's Office, Bismarck, N.D., for defendants.

## MEMORANDUM AND ORDER

WEBB, District Judge.

Before this court is plaintiff's motion for summary judgment and defendant's cross motion in the same matter. Plaintiff brings this action, alleging that the defendant does not have the authority to alter the tribal roll established in 1940, pursuant to the Act of 1940, Pub.L. 76–520, 54 Stat. 219. The federal defendants have stipulated to a preliminary injunction. The injunction prohibits the government from taking any action to remove persons from the roll of the Turtle Mountain Band of Chippewa Indians or from reducing the Indian blood quantum of any members of the class.

## FACTUAL BACKGROUND

The plaintiffs have brought this class action suit in response to the Bureau of Indian Affair's attempt to recalculate the blood quantum of the enrolled members listed on the tribal roll established and accepted by the Secretary of Interior in 1943. The Secretary of Interior was directed to establish and maintain the roll of Turtle Mountain Band of Chippewas pursuant to the Act of 1940, Pub.L. 76–520, 54 Stat. 219. The first roll, known as the 1940 roll, was prepared under the supervision of John Holst, the Superintendent of the Turtle Mountain Agency. The 1940 roll was approved by the Secretary of the Interior on March 15, 1943. Between 1940 and 1982, the Bureau of Indian Affairs updated the tribal roll to include descendants of the 1940 roll. In 1983, the Bureau initiated an effort to recalculate the Turtle Mountain Band roll because of the passage of the Act of December 31, 1982, Pub.L. 97–403, 96 Stat. 2022. The 1982 Act designated the Bureau as responsible for distributing judgment funds to individual tribal members, certain tribes, and other groups. The Act provides that the judgment funds allocated to the Turtle Mountain Band "shall be used and distributed as follows: (1) Eighty per centum of such funds shall be distributed in the form of per capita payments (in sums as equal as possible) to all enrolled members of the Turtle Mountain Band of Chippewa Indians who are living on the date of the enactment of this Act." *Id.* As a result of the review, the Bureau proposes 2046 increases in blood quantum and 1737 decreases. Because some individuals will no longer be listed as having one-quarter Indian blood, the Bureau proposes to disenroll up to 752 people from the Turtle Mountain Band. Further, 1278 individuals became eligible to be added as a result of the proposed procedure.

Plaintiffs filed this class action suit to prevent the proposed disenrollments, claiming that the Bureau of Indian Affairs does not have the authority to determine tribal membership, nor does it have the authority to reduce the Indian blood quantum of those on the roll adopted in 1943. The defendant's allege that their authority to

review and make changes to Indian blood quantum, effectively changing the eligible enrollees, may be found in the authority granted to the Bureau of Indian Affairs by the Act of 1940. The court now addresses the cross-motions for summary judgment.

## ANALYSIS

■ The "legislative will must be ascertained from the text of the statute if the words are clear and plain and the whole enactment internally cohesive." *Adams v. Morton,* 581 F.2d 1314, 1320 (9th Cir.1978), cert. denied 440 U.S. 958, 99 S.Ct. 1498, 59 L.Ed.2d 771 (1979) (citations omitted). When the intent of Congress is clearly expressed, the court will not strain to interpret the statute, nor will it apply an interpretation that is extended and distorted beyond the words' popular meaning. *Id.*

### *Act of 1940 and Turtle Mountain Band of Chippewa Indians*

### *Constitution*

■ In the Act of 1940, Congress authorized the establishment of a reservation for the Turtle Mountain Band of Chippewa Indians. The Act of 1940 provides for the creation of a membership roll as follows:

Sec. 2. For the purpose of this Act, the Indians of the Turtle Mountain Reservation shall include the following: (1) All Indians carried on the official census of the Turtle Mountain Reservation as of the date of this Act; (2) all unenrolled Indians who were members of the band or bands which constituted the Turtle Mountain Tribe prior to October 8, 1904, but who failed to apply for enrollment on the roll closed on that date, and their descendants of one-half or more Indian blood. *The roll of Turtle Mountain Indians as defined in this Act shall be prepared under the direction of the Secretary of the Interior and shall be kept current by striking the names of deceased persons and adding the names of Indians of one-fourth or more Indian blood who are descendants of persons enrolled on said roll:* Provided, That Turtle Mountain Indians domiciled in Canada shall not be included.

Pub.L. 76–520, 54 Stat. 219, Act of May 24, 1940 (emphasis added).

The Constitution adopted by the Turtle Mountain Band of Chippewa Indians is substantially similar to the authority granted the Bureau of Indian Affairs in the Act of 1940. Article III, Section 1, of the Turtle Mountain Band of Chippewa Indians Constitution provides:

The membership in the Turtle Mountain Band of Chippewa Indians shall consist of:

(a) All persons whose names appear on the roll prepared pursuant to Section 2 of the Act of May 24, 1940 (54 Stat. 219), and approved by the Secretary of the Interior on March 15, 1943.

(b) All descendants of persons whose names appear on the roll defined in Section 1(a) of this article, provided that such descendants possess one-fourth or more Indian blood, and provided further that such descendants are not domiciled in Canada.

Article III, Section 2, of the Turtle Mountain Band Constitution provides:

Current Roll. The membership roll shall be kept current by the Secretary of the Interior or his designated representative by striking therefrom the names of deceased persons and adding thereto the names of persons who qualify for membership under Section 1(b) of this article.

Stipulation of Facts at 2.

The Enabling Act of 1940 and the subsequent adoption of the Turtle Mountain Band of Chippewa Indians Constitution authorizes the Bureau of Indian Affairs to prepare the membership roll of the Turtle Mountain Band of Chippewa Indians and to keep the roll current by following specified procedures, namely striking the names of deceased members and adding those that are descendants of an enrolled member who possesses ¼ Indian blood. The review process after the roll has been approved by the Secretary of Interior is limited to these functions. The language of the Act in no way gives the Bureau the authority to re-prepare the roll. The Bureau is not authorized to make a subsequent independent

assessment of blood quantum, other than calculations derived from the quantum established on the roll adopted. It is clear from the legislative history and ensuing use of the roll that Congress intended that the roll adopted by the Secretary in 1943 would establish the membership of the tribe; the roll thus being determinative both as to membership and blood quantum. This fact is particularly potent in light of the fact that the rights of descendants of enrolled members are dependant upon the established record. *See* Plaintiff's Brief in Support of Summary Judgment at 5–9. Therefore, the Bureau of Indian Affairs is precluded from changing the blood quantum of members of the Turtle Mountain Band of Chippewa Indians enrolled and accepted in 1943.

### Act of 1982

The Act of 1982 specifies that the judgment funds are to be distributed "to all enrolled members of the Turtle Mountain Band of Chippewa Indians who are living on the date of the enactment of this Act." The governments use of the term "duly" or "properly" enrolled members strains the language of the statute, and therefore will not be accepted by the court.

The government argues that the Act does not allow for the additional members who may have been born during the year and who are not yet enrolled. In so arguing, the government asserts that the Bureau is allotted additional time to develop a roll, both by making it current and by correcting the previous roll. The court does not find merit in this argument. There is no question that the Bureau has the authority to update the roll to include those born prior to and including December 31, 1982. Performance of this function does not violate the principle that the roll is conclusive as to membership and blood quantum of the individuals enrolled in 1943.

On January 6, 1986, in a memorandum, the Acting Director of Indian Services directed that:

[i]n view of the need for the 1982 current membership roll to be used in the upcoming distribution of Pembina judgment funds, the agency staff, in reviewing the roll prior to approval, should utilize the following procedures. The basic membership roll should be reviewed carefully and, where mathematical errors are noted, the individual or heads of families descended from that family notified of the correction of the mathematical error and of the corrected blood degree of subsequent generations.

Defendant's Brief in Support of Motion for Summary Judgment at 5.

The mandate expressed by the Acting Director was to correct mathematical errors noted and to notify the individuals which are affected by such calculations. The mathematical corrections and changes in blood degree are to affect *subsequent* generations. It is not to affect the blood quantum of those on the original roll adopted in 1943. The court finds this interpretation would be appropriate. As the government notes, the enrollee is in the best position to know his or her blood quantum. Purely mathematical corrections are within the realm of the Bureau of Indian Affairs authority, as those errors have been made as a result of express authority given to the Bureau in the Act of 1940 to update the membership roll. There are established appeal and enrollment procedures which the applicant must follow in order to become an enrolled member of the tribe. 25 C.F.R. Part 62 (1990). Therefore, the court recognizes that the development of subsequent rolls is an ongoing process. The roll established in 1943 is conclusive as to those individuals blood quantum; subsequent calculations using the listed quantum may be accomplished without exceeding the scope of the Bureau's authority. Although the effect of the mathematical calculations may be to enroll some members of the tribe while disenrolling others, the court finds that such a procedure would be within the authority granted to the Bureau of Indian Affairs.

The defendant asserts that, if the plaintiff's arguments are accepted and the Bureau is not allowed to correct the blood quantum of tribe members whose blood

quantum is incorrectly listed on the 1940 roll, individuals not entitled to receive the judgment funds would receive money whereas those entitled to such funds would not receive their share. The government argues that this result would be absurd. Regardless of the absurdity of the outcome, the court finds that it is the correct result under the circumstances. The Bureau of Indian Affairs knew of existing inaccuracies when the Secretary of Interior adopted the roll on March 15, 1943. The appropriate time to make the corrections to blood quantum of those individuals was then, not some forty years later. There must be some starting point at which to determine membership of the Turtle Mountain Band of Chippewa Indians. The roll adopted in 1943 is that point. The enrollees on the 1940 roll sufficiently established their blood quantum in order to be enrolled. These individuals will remain enrolled, as will their descendants who have been correctly enrolled based on the blood quantum figures of their ancestors.

### Title 25 United States Codes Section 163

The plaintiffs argue that Title 25 of the United States Code Section 163 establishes the 1940 roll as conclusive and therefore the Bureau has no authority to change the blood quantum of the enrollees on said roll and all descendants thereafter. Title 25 of the United States Code section 163 provides:

> The Secretary of the Interior is authorized, wherever in his discretion such action would be for the best interest of the Indians, to cause a final roll to be made of the membership of any Indian tribe; such rolls shall contain the ages and quantum of Indian blood, and when approved by the said Secretary are declared to constitute the legal membership of the respective tribes for the purpose of segregating the tribal funds as provided in section 162 of this title, and shall be conclusive both as to ages and quantum of Indian blood: . . . .

25 U.S.C. § 163 (effective June 30, 1919).

In *Sac and Fox Tribe of Indians of Oklahoma v. Andrus,* 645 F.2d 858 (10th Cir.1981), the court held the roll of the Fox and Sac Tribe had become final and conclusive in the year in which the roll was approved, and that attempts to reopen the issue of blood quantum of certain persons was untimely and therefore impermissible. In *Sac and Fox,* a subsequent roll was permitted to be prepared and adopted when it became clear that the roll adopted in 1937 showed the total Indian blood, whereas only the roll of the Sac and Fox tribe was required. *Id.* at 862. The court stated that the original roll may be conclusive and final as to Indian blood quantum. *Id.* There is no similar reason why a new roll of Turtle Mountain Band of Chippewa Indians need be prepared. Therefore, the court finds that the roll adopted in 1943, pursuant to the Enabling Act of 1940, is conclusive and final for the distribution of the judgment funds. Finality is the essence of Section 163, and such finality may be applied to the Enabling Act of 1940.

The government argues that section 163 cannot be the basis for the 1940 roll because the 1940 roll was not established for the purpose of segregating funds, but rather for the purpose of identifying the Indians of the reservation. However, the Act of 1982 refers to *all* enrolled members of the Turtle Mountain Band of Chippewa Indians, in effect giving the roll of 1940 the additional purpose of judgment distribution. The new roll completed in accordance with the Bureau's authority will become final and conclusive under Section 163. *See Sac and Fox Tribe of Indians of Oklahoma v. Andrus,* 645 F.2d at 862. Therefore, the court finds that the government has interpreted Section 163 too narrowly, and that its provision for conclusiveness and finality apply to the Turtle Mountain Band of Chippewa Indians roll accepted by the Secretary of Interior in 1943.

THEREFORE, IT IS ORDERED that:

(1) The Bureau of Indian Affairs does not have the authority to correct the blood quantum of enrollees on the 1940 roll;

(2) All subsequent calculations are to be made fully respecting the 1940 roll blood quantum figures;

(3) Incorrect mathematical calculations utilizing the 1940 roll blood quantum figures may be corrected, even though the effect may be to disenroll some members and enroll others;

(4) Individuals may be added to the roll of the Turtle Mountain Band of Chippewa Indians if they have established the necessary degree of blood quantum and followed the procedures established in 25 C.F.R. Part 62 (1990).