## ROFF *v.* BURNEY.

### ERROR TO THE UNITED STATES COURT FOR THE INDIAN TERRITORY.

No. 84. Submitted October 15, 1897. — Decided November 29, 1897.

A right of citizenship in an Indian Nation, conferred by an act of its legislature, can be withdrawn by a subsequent act; and this rule applies to citizenship created by marriage with such a citizen.

Whether any rights of property could be taken away by such subsequent act, is not considered or decided.

THIS case comes from the United States Court for the Indian Territory on a certificate as to jurisdiction. The amended complaint filed in that court November 6, 1893, besides stating a cause of action in favor of the plaintiff against the defendant, alleges the following facts bearing on the question of jurisdiction: That the plaintiff is a natural born citizen of the United States of America; has never renounced his allegiance to said government, and has never taken an oath of allegiance to any foreign government of any kind whatever; that he has ever been and is yet a citizen of the United States; that the legislature of the Chickasaw Nation, on October 7, 1876, passed the following act:

"SECTION 1. Be it enacted by the legislature of the Chickasaw Nation, That the right of citizenship is hereby granted to the following-named children and nephews of William H. Bourland: Amanda, Matilda, Gordentia and Run Hannah."

That by this act, which was simply a confirmation of a prior statute, passed in 1857, the parties named therein became adopted citizens of the Chickasaw Nation; that he was duly and legally married to one of the parties named therein, to wit, Matilda Bourland, while she was such adopted citizen; that thereafter, and on October 11, 1883, the legislature of the Chickasaw Nation passed another act, as follows:

"SEC. 1. Be it enacted by the legislature of the Chickasaw Nation, That the right of citizenship granted to the following-named children and nephews of W. H. Bourland, Amanda, Matilda, Gordentia and Run Hannah, approved October 7, 1876, the same is hereby repealed and annulled.

"SEC. 2. Be it further enacted, That the governor is hereby directed and required to remove said parties and their descendants beyond the limits of this nation, and that this act take effect from and after its passage."

And that since the passage of the last-named act the Chickasaw government and all the officials thereof have refused to recognize this plaintiff as a member of the Chickasaw tribe, or a citizen of said Chickasaw Nation, and that the courts of that nation have refused to entertain jurisdiction of any controversy between him and any member of the tribe of Chick-

asaw Indians, and still refuse to entertain jurisdiction of such controversies.

Article 7 of the treaty of June 22, 1855, between the United States and the Choctaw and Chickasaw tribes, 11 Stat. 611, 612, is as follows:

"So far as may be compatible with the Constitution of the United States and the laws made in pursuance thereof, regulating trade and intercourse with the Indian tribes, the Choctaws and Chickasaws shall be secured in the unrestricted right of self-government, and full jurisdiction, over persons and property, within their respective limits; excepting, however, all persons with their property, who are not by birth, adoption or otherwise citizens or members of either the Choctaw or Chickasaw tribe."

Article 38 of the treaty with the same tribes, of date April 28, 1866, 14 Stat. 769, 779, provides:

"Every white person who, having married a Choctaw or Chickasaw, resides in the said Choctaw or Chickasaw Nation, or who has been adopted by the legislative authorities, is to be deemed a member of said nation, and shall be subject to the laws of the Choctaw and Chickasaw Nations according to his domicil, and to prosecution and trial before their tribunals, and to punishment according to their laws in all respects as though he was a native Choctaw or Chickasaw."

Section 6 of the act creating the United States Court in the Indian Territory, approved March 1, 1889, c. 333, 25 Stat. 783, 784, reads:

"That the court hereby established shall have jurisdiction in all civil cases between citizens of the United States who are residents of the Indian Territory, or between citizens of the United States, or of any State or Territory therein, and any citizen of or person or persons residing or found in the Indian Territory, and when the value of the thing in controversy, or damages or money claimed shall amount to one hundred dollars or more: *Provided,* That nothing herein contained shall be so construed as to give the court jurisdiction over controversies between persons of Indian blood only."

This was amended by the act of May 2, 1890, c. 182, 26 Stat. 94, which, in section 30, p. 94, contains this proviso:

"Provided, however, That the judicial tribunals of the Indian nations shall retain exclusive jurisdiction in all civil and criminal cases arising in the country in which members of the nation by nativity or by adoption shall be the only parties."

And in section 31, p. 96, it was also provided:

"But nothing in this act shall be so construed as to deprive any of the courts of the civilized nations of exclusive jurisdiction over all cases arising wherein members of said nations, whether by treaty, blood or adoption, are the sole parties, nor so as to interfere with the right and power of said civilized nations to punish said members for violation of the statutes and laws enacted by their national councils where such laws are not contrary to the treaties and laws of the United States."

Mr. *C. L. Herbert* for plaintiff in error.

Mr. *H. C. Potterf* and Mr. *W. F. Bowman* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The condition of the Indians and Indian tribes within the limits of the United States is anomalous. The tribes, though in certain respects regarded as possessing the attributes of nationality, are held to be not foreign, but domestic dependent nations. *Cherokee Nation* v. *Georgia,* 5 Pet. 1; *Worcester* v. *Georgia,* 6 Pet. 515; *Choctaw Nation* v. *United States,* 119 U. S. 1; *Cherokee Nation* v. *Kansas Railway Company,* 135 U. S. 641. While the Indians and the territory which may have been specially set apart for their use are subject to the jurisdiction of the United States, and Congress may pass such laws as it sees fit prescribing the rules governing the

intercourse of the Indians with one another and with citizens of the United States, and also the courts in which all contro- versies to which an Indian may be a party shall be submitted, *United States* v. *Rogers*, 4 How. 567; *United States* v. *Kagama*, 118 U. S. 375; *Gon-Shay-Ee, Petitioner*, 130 U. S. 343; *Cherokee Nation* v. *Kansas Railway Company, supra*, the mere fact that a citizen of the United States has become a member of an Indian tribe by adoption may not necessarily cancel his citizenship. As said by Chief Justice Taney, in *United States* v. *Rogers, supra*, p. 573, "whatever obligations the prisoner may have taken upon himself by becoming a Cherokee by adoption, his responsibility to the laws of the United States remained unchanged and undiminished." In- deed, by section 43 of the act of May 2, 1890, c. 182, 26 Stat. 99, provision is made for the naturalization of members of the Indian tribes in the Indian Territory, with a proviso "that the Indians who become citizens of the United States under the provisions of this act do not forfeit or lose any rights or privileges they enjoy or are entitled to as members of the tribe or nation to which they belong."

Now, according to this complaint, plaintiff was a citizen of the United States. Matilda Bourland was not a Chickasaw by blood, but one upon whom the right of Chickasaw citizen- ship had been conferred by an act of the Chickasaw legislat- ure. The citizenship which the Chickasaw legislature could confer it could withdraw. The only restriction on the power of the Chickasaw Nation to legislate in respect to its internal affairs is that such legislation shall not conflict with the Constitution or laws of the United States, and we know of no provision of such Constitution or laws which would be set at naught by the action of a political community like this in withdrawing privileges of membership in the community once conferred. The Chickasaw legislature, by the second act, whose meaning is clear though its phraseology may not be beyond criticism, not only repealed the prior act but cancelled the rights of citizenship granted thereby, and further directed the governor to remove the parties named therein and their descendants beyond the limits of the nation. This act was

not one simply taking effect as of the date of its passage, and then withdrawing rights admitted to have been theretofore legally granted, but was retroactive in its scope, and purported to annul and destroy all that had ever been attempted to be done in respect to the matter. Whether any rights of property could be taken away by such subsequent act need not be considered. It is enough to hold that all personal rights founded on the mere status created by the prior act fell when that status was destroyed. Plaintiff never took any oath of allegiance to the Chickasaw Nation; never in terms relinquished his full rights as a citizen of the United States. Doubtless, by intermarriage with one who was at the time by legislative act a Chickasaw citizen, he acquired the rights and privileges of a member of that tribe or nation, but when that which was the foundation upon which such acquisition rested was taken away by act of the nation, then all those rights and privileges ceased. The tie which bound him to the nation was his wife's citizenship. That tie the nation destroyed. Its destruction released him. That such was the effect of this legislative act is established by the conduct of the Chickasaw government and all its officials, for they have refused to recognize plaintiff as any longer a member of the Chickasaw Nation, and the courts of that nation have declined to entertain jurisdiction of any suits brought by him against a Chickasaw. The validity of the act withdrawing citizenship from the wife of plaintiff, and the consequent withdrawal from plaintiff of all the rights and privileges of citizenship in the Chickasaw Nation, has been practically determined by the authorities of that nation, and that determination is not subject to correction by any direct appeal from the judgment of the Chickasaw courts. It follows, therefore, that his right as a citizen of the United States to appeal to the Federal courts to take jurisdiction of his claims against one of the Chickasaw Nation must be sustained, for it cannot be that a citizen of the United States residing in the Chickasaw Nation can be wronged without an opportunity of redress in some judicial tribunal. We are of opinion, therefore, that the plea to the jurisdiction was wrongfully

sustained, and the judgment of the United States Court for the Indian Territory will be

*Reversed and the case remanded, with instructions to overrule the plea to the jurisdiction.*