581 F.2d 1314
 Clarence ADAMS, Nellie B. Martin, James Richard Swanson, and
Donita Adams Nordlund, on behalf of themselves and
all others similarly situated,
Plaintiffs-Appellees,
v.
Rogers MORTON, Secretary of Interior, James F. Canan, Area
Director, Bureau of Indian Affairs, Rod Scurlock,
and the United States of America,
Defendant-Appellee,
Gros Ventre Tribe of the Fort Belknap Indian Reservation,
Montana, Appellant.
 No. 75-3577.
 United States Court of Appeals,
Ninth Circuit.
 July 18, 1978.
Rehearing and Rehearing In Banc Denied Sept. 13, 1978.
 
 Barbee B. Lyon (argued), Portland, Or., for appellant.
 Maryann Walsh (argued), of Dept. of Justice, Washington, D. C., for plaintiffs-appellees.
 Appeal from the United States District Court, District of Montana.
 Before CHAMBERS, KILKENNY and TANG, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 
 1
 This is an appeal by the Gros Ventre Tribe of the Fort Belknap Indian Reservation, Montana (appellant),* from an adverse judgment in connection with funds appropriated by Congress for distribution to members of the Tribe. Appellant challenges the right of those known to the record as the "Adams Group" to participate in the Congressional allotment. We affirm.
 
 PREVIOUS LITIGATION
 
 2
 An examination of the background to this litigation is essential to a proper understanding of the procedural problems presented by this appeal. In 1968, pursuant to a judgment awarded by the Indian Claims Commission, Congress appropriated 2.1 million dollars for the Gros Ventre Tribe in settlement of disputed tribal land conveyances. The appropriations measure contained specific statutory language designating the recipients.
 
 
 3
 Two groups, the Azure Group and the Adams group, appellees, over strong opposition, sought to participate in the distribution. The Secretary of the Interior (Secretary) argued that the Azure Group was ineligible while the appellant Tribe contended that the Adams Group should not share. In July, 1972, the Azure Group sued in district court (Butte Division) seeking to reverse the Secretary's decision that they would receive no part of the settlement fund. In August, 1972, the district judge entered an order enjoining the Secretary from distributing any of the Congressional funds until the Azure Group had been given ten days notice. In March of 1973, appellant filed two motions with the court: the first to realign itself as a party plaintiff with the Azure Group in their litigation because it supported the Azure claim; and the second to enjoin permanently the Secretary from distributing funds to members of the Adams Group. After arguments on these matters on April 10, 1973, the Adams Group being represented, the district judge granted the motion to realign, but refused to enjoin permanently distribution to the Adams Group. However, this order continued the August, 1972, injunction with the minor modification that no funds could be distributed without leave of the court.
 
 
 4
 Shortly after this order was issued, the Adams Group filed suit against the Secretary in district court (Billings Division), seeking injunctive and declaratory relief requiring the Secretary to remit a share of the fund to them. The Secretary answered on August 2, 1973, claiming that the injunction in the Azure case prohibited him from making any payments to the Adams Group.
 
 
 5
 In February of 1974, while the Adams Group's suit was in the preliminary stages, the district judge granted the Azure Group's motion for summary judgment in its suit. In the same order, the district judge rejected any claims that the appellee Adams Group might have to recover any share of the fund. While the Azure case was awaiting appeal to this court, action on the Adams Group's suit continued. On March 20, 1974, a stipulation was filed between the Adams Group and the Secretary agreeing that the Adams Group was entitled to a part of the distribution, but that it was prohibited by the April 10, 1973, injunction from participating.
 
 
 6
 Once again the focus shifted back to the Azure suit. In November of 1974, because of the similarity of issues before the Ninth Circuit in Azure and its own case in the district court, the Adams Group filed an amicus brief in Azure. On April 15, 1975, this court affirmed the summary judgment in favor of the Azure Group, but the segment of the district court order denying any allotment to the appellee Adams Group was reversed. Azure v. Morton, 514 F.2d 897, 900-01 (CA9 1975).[1]
 
 
 7
 After Azure was decided, the Adams Group moved for summary judgment in its case. Language in their June 3, 1975, motion made it explicitly clear that representatives of appellant should appear to preserve their right to contest any award to the Adams Group. On June 11, 1975, the district judge issued an order setting a hearing on the motion for summary judgment which included the following language:
 
 
 8
 "It is further ordered that any legally constituted and authorized representative of the Gros Ventre tribe may, on or before July 7, 1975, file in this matter objections, with grounds therefor, to the granting of a motion for summary judgment.
 
 
 9
 "If the objections, with grounds therefor, are not filed . . . they will not thereafter be heard."
 
 
 10
 Appellant filed a ten page objection, including authorities, setting out the same substantive arguments that it makes here. At the close of the hearing appellant's counsel asked the district judge if there was anything necessary from a technical standpoint to perfect his client's participation as a party in the case, indicating that his party would file, if necessary, an intervention motion. The judge responded:
 
 
 11
 "It would be the Court's opinion, because I did direct notice be given to the various individuals, to give them an opportunity to come forward and make any objections they had to the motion, that those who have appeared and objected to the motion, of course, will be considered as part of the Court's determination whether or not their objections were valid."
 
 
 12
 On September 23, 1975, the district judge filed his memorandum and order granting summary judgment for the Adams Group. The "Gros Ventre Tribe of the Fort Belknap Indian Reservation, Montana," filed a notice of appeal from this judgment on October 31, 1975.
 
 
 13
 That the district court recognized appellant as a party to the Adams litigation is made manifest by its final judgment in which it passed upon and rejected, as a matter of law, the appellant's claims.
 
 I.
 
 14
 Appellant's contention challenging the jurisdiction over it of the district and this court is meritless. The Tribe places itself in the anomalous position of arguing that it was not a party to the litigation below, while at the same time claiming a right to appeal from the judgment. A thorough analysis of Rule 3, FRAP, shows that only a party or someone privy to the record is entitled to appeal. If the appellant had sought and the court had denied a formal motion to intervene, we would have had jurisdiction to consider the propriety of the denial of that motion. Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 504 (CA3 1976), Cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375. However, the appellant never presented the court with a formal motion to intervene, but instead filed objections to appellees' summary judgment motion. The court properly viewed appellant's objections as a formal entry into the case, and decided the merits of the motion as if appellant had participated in every stage of the proceedings. The horns of appellant's dilemma were presented to appellant's counsel on oral argument, and he conceded that his client should be treated as an intervenor. We add that the record in the district court totally supports the view that appellant was, in fact, an intervenor in that court. Because it fully participated in the summary judgment proceedings, appellant will not now be heard to say that it was not privy to the record in the district court.
 
 
 15
 The rule which binds the Tribe both in the district court and on this appeal is succinctly stated in 1B Moore's Federal Practice, P 0.411(6), at 1552 (2d ed. 1974), as follows:
 
 
 16
 "If a non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation, and had adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the policies underlying the doctrine of judicial finality require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action."
 
 
 17
 Consequently, even though the Tribe could be viewed as a non-party to the action, nonetheless, it fully participated both in the trial court and in this court and must be bound by whatever judgment is rendered. Souffront v. Compagnie Des Sucreries, 217 U.S. 475, 486-87, 30 S.Ct. 608, 54 L.Ed. 846 (1910).II.
 
 
 18
 We need not decide whether appellant was in law an indispensable party. Obviously, it was a proper party. As the Tribe named in the legislation, it had an interest in securing a proper construction of the legislation for the best interests of its members and all those entitled to the funds. Additionally, in our view of the record, appellant fully participated in the litigation and presented its contentions; whether its presence was indispensable or proper is now beside the point.
 
 III.
 
 19
 Next, appellant alleges that there was no case or controversy between the original plaintiffs, the Adams Group, and defendant, the Secretary.
 
 
 20
 The basic question is whether the facts in controversy, under all of the circumstances, show that there is a substantial issue between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a judgment. Steffel v. Thompson, 415 U.S. 452, 460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Rincon Band of Mission Indians v. County of San Diego, 495 F.2d 1, 4 (CA9 1974), Cert. denied, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283.
 
 
 21
 Appellant's contention is belied by the record. The Secretary steadfastly refused to distribute any part of the appropriated fund until all claims were fully adjudicated by the courts. Beyond that, there was the necessity of an adjudication as to the right, if any, of the Adams Group to share in the distribution. The fact that the Secretary agrees with the appellees' statutory interpretation does not affect the power of the court to adjudicate otherwise. Appellant's cases on collusive litigation are inapposite and have no bearing on the record before us.
 
 
 22
 In any event, a controversy arose when appellant filed its objections and participated in the summary judgment hearing.
 
 IV.
 
 23
 Appellant's principal claim is that the members of the Adams Group fail to qualify as Members of the Gros Ventre Tribe. Beyond that, it is argued that to be a member of the Gros Ventre Tribe within the purview of the Congressional settlement, one must meet the Tribe's historical one-fourth degree of blood quantum membership eligibility criterion.
 
 
 24
 The language of the statute which we are to construe, and which was construed in the Azure case, is clear. We quote, in part, as follows:
 
 
 25
 "The sum of $2,100,000 from the funds credited to the Gros Ventre Tribe under section 1261 of this title shall be distributed per capita to all members of the Fort Belknap Community who were born on or prior to and are living on March 18, 1972, And (a) whose names appear on the February 5, 1937, payment roll of the Gros Ventre Tribe of the Fort Belknap Reservation, or (b) who are descended from a person whose name appears on said roll, if such member possesses a greater degree of Gros Ventre blood than Assiniboine blood." (Emphasis supplied). 25 U.S.C. § 1262.
 
 
 26
 Manifestly, any person whose name appeared on the February 5, 1937, payment roll of the Gros Ventre Tribe of the Fort Belknap Indian Reservation, or who is descended from a person whose name appeared on said roll, and who meets the other requirement, is entitled to participation.
 
 
 27
 The allegations of the complaint gives a precise description of the status of the appellees, the Adams Group. The controlling paragraphs read:
 
 
 28
 "III.
 
 
 29
 Plaintiffs Clarence Adams and Nellie B. Martin are members of the Fort Belknap Community born prior to and living on the date of Public Law 92-254; 86 Stat. 64, . . . whose names appear on the February 5, 1937, payment roll of the Gros Ventre Tribe of the Fort Belknap Reservation, citizens of the United States, and residents of Montana; all other plaintiffs whom they represent reside variously within and without the State of Montana.
 
 
 30
 "IV.
 
 
 31
 Plaintiffs James Richard Swanson and Donita Adams Nordlund are members of the Fort Belknap Community born prior to and living on date of Public Law 92-254; 86 Stat. 64 who are descended from persons whose names appear on said February 5, 1937 payment roll and who possess a greater degree of Gros Ventre blood than Assiniboine blood, are citizens of the United States and residents of Montana; all other plaintiffs whom they represent reside variously within and without the State of Montana."
 
 
 32
 The appellant does not dispute these allegations. To the contrary, it concedes the truth of these statements, but then goes on to say the appellees failed to allege that they were "in fact members of the Gros Ventre Tribe."
 
 
 33
 We are governed by the uniform rule of construction that the legislative will must be ascertained from the text of the statute if the words are clear and plain and the whole enactment internally cohesive. Fisher Flouring Mills Co. v. United States, 270 F.2d 27, 30 (CA9 1958). In other words, a court interpreting a statute may not depart from its clear meaning. United States v. Sullivan, 332 U.S. 689, 693, 68 S.Ct. 331, 92 L.Ed. 297 (1948), and where the statute plainly expresses the will of Congress in language that does not permit or require a strained interpretation, words thereof may not be extended or distorted beyond their plain popular meaning. Summer v. Victor Chemical Works, 298 F.2d 66, 68 (CA9 1961); Lindstrom v. Commissioner of Internal Revenue, 149 F.2d 344, 346 (CA9 1945). The court's first duty in construing the statute is to effectuate the express intent of the Congress. Richmond Welfare Rights Organization v. Snodgrass, 525 F.2d 197, 202 (CA9 1975).
 
 
 34
 Here, the appellant would have us read the statute not only that Members of the Gros Ventre Tribe are eligible for participation and distribution, but that the Member must meet the Tribe's historical one-fourth degree blood quantum membership eligibility criterion. We agree with the lower court and with what is said by our colleagues in Azure that there is absolutely no language in the statute which permits such a construction.
 
 
 35
 True enough, unless limited by treaty or statute, a Tribe has the power to determine tribal membership. Cherokee Intermarriage Cases, 203 U.S. 76, 27 S.Ct. 29, 51 L.Ed. 96 (1906); Roff v. Burney, 168 U.S. 218, 222-23, 18 S.Ct. 60, 42 L.Ed. 442 (1897). Here, however, the Congress in precise language has specifically named the fund's beneficiaries. In the recent case of United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978), the Court, in commenting on the unique character of the sovereignty of Indian Tribes, said: "The sovereignty that the Indian tribes retain is of a unique and Limited character. It exists only at the sufferance of Congress and is subject to complete defeasance." (Emphasis supplied.) Cf. Northern Cheyenne Tribe v. Hollowbreast, 425 U.S. 649, 656, 96 S.Ct. 1793, 48 L.Ed.2d 274 (1976).
 
 
 36
 To follow the appellant's suggestion, we would be compelled to read into the statute language which is missing entirely. This is not our function. Because the language of the statute is clear and unequivocal, there is no need for the invocation of aids to construction. The appellees', Adams Group, claim places it squarely within the provisions of subsections (a) and (b) of the controlling legislation.
 
 V.
 
 37
 The other contentions of the appellant, including: (1) lack of compliance with the Federal Rules of Civil Procedure, and (2) that the funds appropriated by Congress actually belonged to the Gros Ventre Tribe, are meritless. The numerous authorities cited by appellant have no application to the record before us.CONCLUSION
 
 
 38
 The judgment of the lower court must be affirmed.
 
 
 39
 SO BE IT.
 
 
 
 *
 Sometimes referred to as Tribe
 
 
 [1]
 "Inasmuch as the district court was faced only with determining the rights of the Azure Group plaintiffs, We reverse that part of the order which addressed and collaterally determined the ineligibility of another 178 Indians, the Adams Group, to participate in the Gros Ventre judgment. Although they are members of the Fort Belknap Community, they do not possess the one-quarter degree Gros Ventre blood quantum requisite to participating membership in the Tribe. Because of this deficiency, the district court precluded their participation in the Gros Ventre award
 "We express no opinion on the merits of this unexpressed eligibility requirement appended by the district court to the language of the distribution statute. We conclude only that it was unnecessary to meet the issue in determining the rights of the Azure Group. All in the Azure Group were members of the Fort Belknap Community. All were listed on the 1937 Gros Ventre payment roll as required by subsection (a). Having determined that the Azure Group is qualified to share in the Gros Ventre judgment, it would be improper for us to rule on a requirement not at issue here involving a group of plaintiffs who are not parties to this suit. Their eligibility to participate in the Gros Ventre judgment is being asserted in a separate action. The propriety of implying in the distribution statute a tribal blood quantum/membership requirement can be more properly presented in that proceeding." 514 F.2d at 900-01. (Emphasis supplied).