Cote, J.
The plaintiffs, Massachusetts residents, filed this negligence action in the Worcester Division of the District Court Department against the Mohegan Indian Tribe of Connecticut and others. The defendants responded with a motion to dismiss for lack of jurisdiction. The motion was granted, and the plaintiffs appealed. Because the incident giving rise to this action occurred on the Mohegan reservation in Uncasville, Connecticut, we conclude that the Worcester Division lacks subject matter jurisdiction to adjudicate this action and affirm the trial judge’s order of dismissal.
*146 “[A] court’s lack of subject matter jurisdiction is a nonwaivable issue that can be raised by either party at any point in the proceedings.” Shea v. Neponset River Marine & Sportfishing, Inc., 14 Mass. App. Ct. 121, 129 (1982), citing Jones v. Jones, 297 Mass. 198, 202 (1937). A motion to dismiss tests the legal sufficiency of the complaint, and should be allowed if and only if “it appears to a certainty that [the plaintiff] is entitled to no relief under any state of facts which could be proved in support of the claim.” Reporters’ Notes to Mass. R. Civ. P. 12 (1973). “In evaluating the allowance of a motion to dismiss, we are guided by the familiar principle that a complaint is sufficient ‘unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.’ Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The allegations set forth in the complaint, as well as such reasonable inferences as may be drawn therefrom in the plaintiff’s favor, are to be taken as true.” Harvard Crimson, Inc. v. President and Fellows of Harvard College, 445 Mass. 745, 748-749 (2006). A defendant may raise the defense of lack of subject matter jurisdiction through a motion to dismiss. Mass. R. Civ. P., Rule 12(b) (1). The issue of Indian tribal sovereign immunity is jurisdictional in nature and, therefore, subject to a Rule 12(b) (1) motion.
For purposes of this appeal, we accept the following factual allegations contained in the plaintiffs’ amended complaint as true. Shortly after midnight on July 7,2002, plaintiffs Sheila and Michael Buzulis left the gaming area of the Mohegan Sun Casino in Uncasville, Connecticut. They were in the process of retrieving Mrs. Buzulis’ coat from the coatroom when a Mohegan Sun security employee, “Jane Doe,” who was responding to an emergency call, negligently ran into and physically injured Mrs. Buzulis. On July 15, 2002, a telephone call was placed on behalf of the plaintiffs to defendant Mary Lou Hoopman, the director of defendant Risk Management, a business entity operated at the Mohegan Sun Casino, to ascertain the procedures for filing a personal injury claim at the Casino. Ms. Hoopman, or her representative, willfully and deliberately failed to provide the correct information. Monetary relief is sought in this action by Mrs. Buzulis for her personal injuries and by Mr. Buzulis for loss of consortium and economic losses resulting from his wife’s injuries.
The United States Supreme Court has held that
Indian tribes are ‘distinct, independent political communities retaining their original natural rights’ in matters of local self-government. Worcester v. Georgia, 6 Pet. 515, 559 (1832) [other citations omitted]. Although no longer ‘possessed of the full attributes of sovereignly,’ they remain a ‘separate people, with the power of regulating their internal and social relations.’ United States v. Kagama, 118 U.S. 375, 381-382, 6 S. Ct. 1109, 1112-1113, 30 L. Ed. 228 (1886). They have power to make their own substantive law in internal matters, see Roffv. Burney, 168 U.S. 218 ... and to enforce that law in their own forums. See, e.g., Williams v. Lee, 358 U.S. 217 (1959). As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal and state authority.
Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55-56 (1978). Native American tribes are “‘domestic dependent nations’ that exercise inherent sovereign authority over their members and territories.” Oklahoma Tax Comm’n v. Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991). “The exercise of tribal governing power may preempt state law in areas where, absent tribal legislation, state law might otherwise apply.” Kizis v. Morse Diesel Intern. Inc., 260 Conn. 46, 53 (2002). “As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity” and the tribe itself has consented to *147 suit in a specified forum. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998). Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits for damages against the tribe. However, such waiver may not be implied, but must be expressed unequivocally. Furthermore, the doctrine of tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority. Santa Clara Pueblo v. Martinez, supra, at 58-60.
The Mohegan Tribe of Connecticut has been recognized by an act of Congress. Mohegan Nation of Connecticut Land Claims Settlement Act of 1994, 25 U.S.C. §1775 et seq. (1994), and the State of Connecticut, General Statutes § 7-59a(b). Pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §2701 et seq. (1988), recognized Indian tribes are permitted to conduct gaming operations in accordance with a gaming compact with a state and approved by the United States Secretary of the Interior. 25 U.S.C. §2710 (d) (1) (C) and (8).
The Mohegan Tribe of Connecticut and the State of Connecticut entered into a Gaming Compact on April 25,1994. The Compact authorized the Mohegan Tribe of Connecticut to conduct Class III gaming operations within the Mohegan reservation. Section 3 (a). The Compact further authorized the Mohegan Tribe to establish procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities, provided that
[t]he tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims... but may adopt a remedial system analogous to that available for similar claims arising against the state....
The Gaming Compact was approved by the Secretary of the Interior, 59 Fed. Reg. 65130 (1994), and incorporated by reference into federal law. 25 U.S.C. §1775.
Pursuant to the Constitution of the Mohegan Tribe of Indians, as ratified on April 12,1996, the Tribal Council is the Tribe’s governing body. Article IV, §1. The Tribal Gaming Authority oversees the Tribe’s gaming operations, Article XII, §1; and the Gaming Disputes Court has exclusive jurisdiction over disputes arising out of, or in conjunction with, “tribal gaming operations and its customers.” Article XIII, §2. Section 6 of the Mohegan Torts Code provides as follows:
This ordinance does not immunize employees of the Mohegan Tribal Gaming Authority from individual liability for the full measure of the recovery applicable to a claimant if it is established that their conduct exceeded the scope of their employment or authority. Claims for individual liability arising out of conduct which is found to exceed the scope of employment and which arise on the Gaming Enterprise Site shall be heard only in the Gaming Disputes Court.
The parties to this action are the Mohegan Tribe, its business divisions and others who provided services to and for the tribe on tribal land. These facts lead us to the inevitable conclusion that the Gaming Disputes Court has exclusive subject matter jurisdiction to adjudicate the rights of the parties, and that the trial judge’s order dismissing the complaint in this action was legally sound and correct.
Therefore, the trial court’s dismissal of the complaint in its entirely is affirmed.
So ordered.