KLEINFELD, Circuit Judge.
This case is controlled by the proposition that an Indian tribe has the power to decide who is a member of the tribe.
Facts
Plaintiffs claim that they are descended from people who wére named as members of the Mooretown Ranchería Indian tribe in either a 1915 census or a 1935 tribal voter list. “Rancherías are numerous small Indian reservations or communities in California, the lands for which were purchased by the Government (with Congressional authorization) for Indian use from time to time in the early years of [the twentieth] century- — a program triggered by an inquiry (in 1905-06) into the landless, homeless or penurious state of many California Indians.”[1] In 1958, the Moore-town Ranchería consisted of two separated 80 acre parcels of land in Butte County, California, near Oroville.
Congress adopted the California Ranchería Termination Act in 1958 in order to distribute ranchería lands to individual Indians.[2] The Act provided for the conveyance of ranchería assets, with unrestricted title, to the individual Indians living there, if a majority of the Indians voting approved. Before conveyance, the Act required the government to survey the land owned by the ranchería, construct or improve the roads serving the ranchería, install or rehabilitate irrigation, sanitation, and domestic water systems, and exchange land held in trust for the ranchería.[3] The *788 Indians who received the assets would not thereafter be entitled to the services provided by reason of Indian status.[4]
Two families occupied the two 80 acre parcels constituting the Mooretown Ranchería. In 1959, the families voted for termination of Mooretown Ranchería and distribution of its land under the Act, and the government distributed the parcels to the members of those families. In 1979, members of thirty-four terminated tribes, including Mooretown Ranchería, filed a class action seeking restoration of tribal status for rancherías. In 1983, the government entered into a consent decree in a class action, restoring the Mooretown Ranchería as a federally-recognized ranchería and Indian tribe.[5]
The Bureau of Indian Affairs (“BIA”) invited the plaintiffs and class members at Mooretown Ranchería to a meeting in June 1984. At the meeting, BIA officers explained that each individual landowner could reconvey his or her land to the United States to be held in trust (avoiding taxes and local regulation but subjecting the land to some federal control), or not, as they chose, and that the tribe could form a government. No one chose to put their land in trust and the tribal members at the meeting chose not to organize a tribal government.
Three years later, sentiments had changed. In October 1987, tribal members organized a tribal meeting. They invited all direct descendants of the people who lived at Mooretown Ranchería when it was terminated in 1959, the BIA, and anyone else interested in attending. The BIA did not organize the meeting and no one from the BIA attended the meeting. The lead plaintiff in this case did attend the meeting. At the October 1987 meeting, Mooretown Ranchería decided to organize a tribal government. Soon afterward, Mooretown Ranchería adopted a tribal constitution. According to the constitution, tribal membership consisted of the four people to whom Mooretown Ranche-ría was distributed upon termination in 1959, their dependents, and lineal descendants of those distributees and their dependents.
The problem that led to this lawsuit is that the plaintiffs got squeezed out of full tribal membership. A 1998 tribal resolution further narrowed full tribal membership to “only those members who are direct lineal descendants of the four distributees.” Other tribal members were “reclassified” by the resolution as “adoptee members.” Thus, although the plaintiffs are Concow-Maidu Indians descended from people who have lived at Mooretown Ranchería for a very long time, they lack the rights of full members of the Mooretown Ranchería tribe. This does not affect their status as Indians for the purpose of federal governmental benefits conferred on Indians. But it does affect their tribal voting rights. Depending on tribal decisions, it may also affect their right to a share of the revenues generated by tribal casinos and other tribal activities.
Plaintiffs sued officials of the Department of the Interior, Bureau of Indian Affairs. They did not sue Mooretown Ranchería. The district court dismissed the case on a motion to dismiss and for summary judgment, and plaintiffs appeal.
*789 Analysis
Plaintiffs have an insuperable problem with their case. An Indian tribe has the power to define membership as it chooses, subject to the plenary power of Congress.[6] Nor need the tribe, in the absence of Congressional constraints, comply with the constitutional limitations binding on federal and state governments when it exercises this and other powers. In 1978, the Supreme Court held in Santa Clara Pueblo v. Martinez that “[a]s separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority.”[7] Even where there is some legal constraint on tribes, “ ‘without congressional authorization,’ the ‘Indian Nations are exempt from suit.’ ”[8] “[T]he tribes remain quasi-sovereign nations which, by government structure, culture, and source of sovereignty are in many ways foreign to the constitutional institutions of the Federal and State governments.”[9]
Doubtless because of these well-established limitations, plaintiffs style their complaint as against the BIA, rather than the tribe. They have two theories.
First, plaintiffs argue that the BIA violated the Administrative Procedure Act by adopting a “rule” without the required notice and comment procedure.[10] The district court rejected this argument, finding that the BIA never promulgated any “rule.” We agree.
It is unclear what “rule” plaintiffs suppose that the BIA promulgated. Plaintiffs note that when the Hardwick stipulated class action judgment restored a number of terminated rancherías, BIA memoranda mentioned using the lists of people to whom the rancherías were distributed upon termination, their dependents, and their lineal descendants as a starting point for determining the tribal membership rolls. If the BIA had promulgated such a rule providing for tribal membership, it putatively would impair the claims of plaintiffs in this case, who are descendants of people who appear in the 1915 tribal census and 1935 tribal voter roll, but are not descendants of the distributees.
But the BIA carefully avoided promulgating any such rule or policy, respecting the right of the various restored rancherí-as to define their own memberships. In 1984, the BIA invited the known Hardwick plaintiffs and class members to a meeting *790 where it told them about the Hardwick settlement and offered to help them form a tribal government, if they chose to do so. The eleven people who came to the Moore-town Ranchería meeting chose not to organize a formal government. In 1987, Mooretown Ranchería invited the BIA— not the other way around — to an “open meeting,” where the Ranchería organized a tribal roll. The invitation, apparently from a member of Mooretown Ranchería, was addressed to direct descendants of the four distributees, but expressly stated that the meeting was “open” and “anyone interested in attending is welcome.”
No one from the BIA attended the 1987 meeting. The lead plaintiff in this case did attend. Plaintiffs do not claim that Mooretown Ranchería organized behind their backs. At the meeting, Mooretown Ranchería organized a tribal government. The Ranchería sent the BIA a copy of the attendance list. The BIA provided neither a membership list nor membership criteria. In 1998, Mooretown Ranchería sent the BIA a copy of its Constitution and Enrollment List,[11] limiting tribal membership to lineal descendants of the four 1959 distributees.
We cannot identify anything the BIA did that constitutes promulgating a “rule” under the Administrative Procedure Act. The BIA never told Mooretown Ranchería who should qualify for tribal membership. When the BIA invited people to a meeting in 1984, it addressed the invitation, “Dear Plaintiff and Class member.” The phrase “class member” referred to the Hardwick class action. When Mooretown Ranchería organized, some of the plaintiffs were members. But when in 1998, Mooretown Ranchería decided to limit tribal membership to “only those members who are direct Lineal Descendants of the four dis-tributees,” [12] those plaintiffs were squeezed out. Uncontradicted evidence establishes that Mooretown Ranchería itself squeezed them out, and that it did not act at the behest of the BIA.
Under Santa Clara Pueblo,[13] Mooretown Ranchería had the power to squeeze the plaintiffs out, because it has the power to define its own membership. It did not need the BIA’s permission and did not ask for it, and the BIA never purported to tell it how to define its membership. Plaintiffs argue that the BIA had a policy amounting to a “rule”[14] that tribal membership in restored rancherías ought to consist of the original distributees and their lineal descendants. We find no evidence of any such policy in the record. And given a tribe’s sovereign authority to define its own membership, it is unclear how the BIA could have any such policy.
Plaintiffs’s best evidence of a BIA policy is its 1984 invitation, which was addressed, “Dear Plaintiff and Class member.” Plaintiffs also point to scattered remarks in *791 BIA documents that suggest the BIA looked to the “distributees and heirs” language of the Hardwick stipulated class action judgment when it decided whom it should contact about reviving other restored rancherías. The Hardwick stipulated judgment defined the class as distrib-utees of each ranchería and their “Indian heirs, legatees or successors in interest.” Plaintiffs can only point to the address, and do not purport to challenge the class definition upon which the BIA based the address. The letter did not suggest any tribal membership criteria, did not result in any organization of Mooretown Ranche-ría (which chose at that time not to reorganize), and did not coincide with the membership criterion that squeezed plaintiffs out when Mooretown Ranchería eventually adopted the membership criterion fourteen years later.
The record does not establish that the BIA had any “rule” governing tribal membership or suggesting tribal membership criteria in restored rancherías. It does not establish that the BIA had any rule— or that Mooretown Ranchería followed any rule — regarding who could attend tribal meetings and participate in organizing a tribal government. And without a “rule,” there can be no violation of the Administrative Procedure Act notice and comment requirements for rules.
Second, plaintiffs argue that the BIA denied them due process of law under the Fifth Amendment because BIA action deprived them of tribal membership. As explained above, nothing in the record supports this allegation. Also, no facts could be proved that would establish such a deprivation. Santa Clara Pueblo and its predecessors establish that “[a] tribe’s right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.”[15] For this reason, the BIA could not have defined the membership of Mooretown Ranchería, even if had tried.
Plaintiffs suggest that we should distinguish Santa Clara Pueblo because the Santa Clara Pueblo were a continuously existing tribe,[16] while Mooretown Ranche-ría was terminated and restored. Such a distinction would be unsound, because it would deprive restored tribes of the power to determine their own membership. Nothing in the ratio decidendi of Santa Clara Pueblo supports such a distinction. Throughout the twentieth century, tribal organization or the lack thereof presented the members of Mooretown Ranchería with both benefits and detriments, and from time to time their decisions and preferences varied. The termination and restoration of Mooretown Ranchería does not justify depriving it of its sovereign power to define its membership when it organized a tribal government in 1987.
AFFIRMED.

. Duncan v. United States, 229 Ct.Cl. 120, 667 F.2d 36, 38 (1981).

. California Ranchería Termination Act, Pub.L. No. 85-671, 72 Stat. 619 (1958).

. California Ranchería Termination Act, Pub.L. No. 85-671, § 3, 72 Stat. 619, 620 (1958) (as amended by Pub.L. No. 88-419, 78 Stat. 390 (1964)). See also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1574 (Fed.Cir.1988).

. California Ranchería Termination Act, Pub.L. No. 85-671, § 10(b), 72 Stat. 619, 621 (1958) (as amended by Pub.L. No. 88-419, 78 Stat. 390 (1964)). See also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1575 (Fed.Cir.1988).

. Hardwick v. United States, No. C 79-1710 SW (N.D.Cal.1983).

. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) ("A tribe’s right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.”). See Adams v. Morton, 581 F.2d 1314, 1320 (9th Cir.1978) (“[Ujnless limited by treaty or statute, a Tribe has the power to determine tribal membership.”), accord, Apodaca v. Silvas, 19 F.3d 1015 (5th Cir.1994) (per curiam); Smith v. Babbitt, 100 F.3d 556 (8th Cir.1996); Ordinance 59 Assn. v. United States Dept. of the Interior, 163 F.3d 1150 (10th Cir.1998). See also, Felix S. Cohen, Handbook of Federal Indian Law 98-100, 133-37 (1942).

. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (Marshall, J.). Santa Clara Pueblo cites Roff v. Burney, 168 U.S. 218, 18 S.Ct. 60, 42 L.Ed. 442 (1897). In Roff, the Supreme Court held that the "only restriction on the power” of an Indian tribe "to legislate in respect to its internal affairs is that such legislation shall not conflict with the Constitution or laws of the United States.” Roff v. Burney, 168 U.S. 218, 222, 18 S.Ct. 60, 42 L.Ed. 442 (1897).

. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 71, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

. 5U.S.C. §551.

. Mooretown Ranchería is not organized under the Indian Reorganization Act, so the BIA did not require it to provide these materials.

. Mooretown Ranchería, Resolution 98-218, Reclassification of Membership in Accordance With the Constitution of the Moore-town Ranchería, February 18, 1998 (emphasis in original).

. Santa Clara Pueblo v. Martinez 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

.5 U.S.C. § 551(4) (" 'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing”).

. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).